IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **v.** | : | **Case No. 1:22-cr-00012-CRC** |
| | : | |
| **ANDREW GALLOWAY,** | : | |
| **Defendant.** | : | |

## DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

The defendant, Andrew Galloway, through his attorney, Allen H. Orenberg, pursuant to Federal Rule of Criminal Procedure 32 and 18 U.S.C. Section 3553(a), submits this memorandum to aid the Court at sentencing. Mr. Galloway notifies the Court that he has received and reviewed the Presentence Report ("PSR") prepared in this case. After carefully reviewing the PSR with Mr. Galloway, there are no objections. Mr. Galloway requests this Honorable Court impose, essentially, a sentence of a term of 12 months probation with community service to account for:

1.      His lack of preparation or planning prior to January 6, 2021 to be part of the U.S. Capitol breach event, as well as his peaceful, non-destructive and non-violent behavior that day both outside and inside the U.S. Capitol building.

2.   His immediate cooperation with law enforcement officers when arrested, inckuding his ongoing cooperation and willingness to resolve his case at the earliest opportunity.

3.   The Court's consideration and evaluation of all of the Title 18 U.S.C. § 3553(a) factors. (This is a "non-guideline's case)

Mr. Galloway comes before the Court having plead guilty on January 14, 2022, to Count Four of the Information, charging him with a violation of Title 40 U.S.C. §5104(e)(2)(g) – Parading, Demonstrating, or Picketing in a Capitol Building. A sentence of 12 months of probation, with community service, is a reasonable sentence that is "sufficient, but not greater than necessary" to address the sentencing factors and goals set forth in Title 18 U.S.C. § 3553(a). Under the facts of this case, such a sentence will protect the public, provide just punishment, and afford adequate deterrence.

### I.   <u>The Charges and the Arrest of Mr. Galloway</u>

On January 4, 2022, a criminal complaint (Doc. 1) was filed in U.S. District Court for the District of Columbia charging Mr. Galloway with four misdemeanor offenses related to his conduct on January 6.[1] On January 11, 2022, he was arrested in Nashville, TN. On January 13, 2022, an Information was filed (Doc. 7) charging the same four misdemeanors. He was presented the same day in this Court (VTC) before United States Magistrate Judge G. Michael Harvey and he was released on personal recognizance with conditions.

On March 8, 2022, Mr. Galloway appeared before U.S. District Judge Christopher R. Cooper via video conference and the Court accepted his voluntary plea of guilty to a Count Four of an Information: 40 U.S.C. § 5401(e)(2)(G)

---

[1] (Count 1) 18 U.S.C. § 1752(a)(1) (Entering or Remaining in a Restricted Building or Grounds), (Count 2) 18 U.S.C. § 1752(a)(2) (Disorderly and Disruptive Conduct in a Restricted Building or Grounds), (Count 3) 40 U.S.C. § 5401(e)(2)(D) (Disorderly Conduct in a Capitol Building), and (Count 4) 40 U.S.C. § 5401(e)(2)(G) (Parading, Demonstrating or Picketing in a Capitol Building).

(Parading, Demonstrating or Picketing in a Capitol Building). This particular statute carries a possible penalty of up to six months imprisonment, five years of probation and a fine of up to $5,000.00 As a Class B misdemeanor, the U.S. Sentencing Guidelines do not apply. As part of the plea agreement (Doc. 20), Mr. Galloway has agreed to remit $500.00 as restitution and pay a $10.00 special assessment.

Sentencing is scheduled for October 12, 2022 at 11:00 a.m. (VTC)

## II.   <u>Mr. Galloway's Trip To D.C. And His Walk To The U.S. Capitol</u>

Mr. Galloway believed he should show his support for the soon to be former President by attending the rally on the Ellipse scheduled for January 6, 2021. Importantly, Mr. Galloway was fixated on the *process,* not the result of the election. The emphasis on the process, and not the result, is particularly important because it shows that Mr. Galloway values the Constitution and the foundation of our government.

At no time on January 6th did he ever think he was going to the U.S. Capitol grounds, let alone inside the Capitol building. Not until Mr. Trump's speech did he have any intention of going anywhere other than the Ellipse area. As the day unfolded, he never planned or envisioned entering the U.S. Capitol building. That is, not until Mr. Trump invited everyone to march to the U.S. Capitol. Mr. Galloway followed the large crowd there that day with no intention of doing anything but having his voice join those of thousands of other peaceful protestors. Now, after seeing what really happened that day by watching film on numerous platforms, Mr. Galloway regrets that he was a part of it, albeit a small part of it compared to the

many violent protesters who assaulted police officers and caused damage to the U.S. Capitol building and grounds.

### III.    Mr. Galloway's Activities Inside And Outside The U.S. Capitol

Mr. Galloway was not in the first wave of hundreds of protesters who entered the grounds and U.S. Capitol building. He believes he was at least hundreds of people back behind the original breach. He could not see what was transpiring inside the Capitol building. He had no idea of the violence in other parts of the Capitol. Mr. Galloway recalls he was so far behind the first people who went into the building that he had no idea how the door was opened or who opened it. At all times. Mr. Galloway was not violent, he carefully observed the situation around him, and he acted with decency

As he entered the Capitol building through a window near the Senate Wing door entrance at approximately 2:24 p.m. He walked into the Crypt and at 2:34 p.m. he exited the Capitol through another window near the Senate Wing door. He estimates he was inside the building for approximately 10 minutes.

Mr. Galloway recalls that while inside the Capitol building hee mood was not unlike other protests in Washington, D.C. Other persons around him took selfies and, for the most part, they appeared to him to be peaceful with their cameras, flags and movements. While inside, Mr. Galloway did observe others protesting and demonstrating in the area but he did not participate in this conduct or otherwise engage police officers.

Once outside the Capitol building, he left the area and went back to his hotel. He did not leave the hotel that evening. The next morning (January 7, 2021) he

drove back to his home in Nashville, TN. As noted in the Statement of Offense, there is no evidence he was violent or destructive on the grounds or inside the Capitol. *See* Statement of Offense. (Doc. 21)

IV.     **Hindsight Is 20/20.**

Now, in retrospect, Mr. Galloway never imagined going inside the U.S. Capitol building and certainly never thought that violence and destruction of property would occur. He was not part of a group that either organized activities on January 6th nor does he subscribe to any far-right political views. Importantly, Mr. Galloway did not have any intention of stopping the vote. Indeed, Mr. Galloway aimlessly followed the crowd through the U.S. Capitol grounds and into the building because he was curious about what was transpiring that day, rather than a desire to execute a plan to stop the vote which was taking place in the Congress.

Mr. Galloway's only intention that day was to have his voice heard. In fact, he had no idea where he was while he was in the Capitol building, he was briefly inside the building, and to this day could not find his way around inside the building if given the opportunity.

V. **LEGAL STANDARD**

Section 3553 of Title 18 of the United States Code enumerates certain factors a district court is to consider when sentencing a defendant who has been convicted of a federal offense. Primarily, the court shall consider the nature and circumstances of the offense and the history and characteristics of the defendant. *See* 18 U.S.C. § 3553(a)(1). The court shall also consider the need for the sentence imposed to: reflect the seriousness of the offense, promote respect for the law, and

provide just punishment; afford adequate deterrence to criminal conduct; protect the public from further crimes of the defendant; and provide defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. *Id.* at § 3553(a)(2)(A-D). Section 3553(a) further sets forth the factors that the Court must consider in fulfilling the provision:

1. The nature and circumstances of the offense and  the history and characteristics of the defendant;
2. The need for the sentence imposed;
3. The kinds of sentences available;
4. The kinds of sentence and the sentencing range…;
5. Any pertinent policy statements issued by the Sentencing Commission;
6. The need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and
7. The need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a)(1-7).

## VI.   <u>FACTORS CONSIDERED PURSUANT TO 18 U.S.C. §3553(a)</u>

At sentencing, a district court must impose a sentence that is "sufficient, but not greater than necessary" in light of the factors identified in §3553(a). *United States v. Mendoza-Mendoza*, 597 F.3d 212, 216 (4th Cir. 2010), *citing Kimbrough v. United States*, 552 U.S. 85, 111 (2007)(quoting §3553(a)).

### A.   **Nature & Circumstances Of The Offense &**
### **The History And Characteristics of Mr. Galloway**

As Mr. Galloway walked freely into the U.S. Capitol building on January 6, 2021, he was in awe. He had to take a moment and let it soak in. For approximately

five minutes he merely walked in, and through, then out of the building in a calm and non-agitated manner.

Compared to many other misdemeanor cases which have been filed in this Court, Mr. Galloway's conduct is at or near the bottom of the scale. First, the defense is not aware of any evidence that his entry into the U.S. Capitol building was preplanned or coordinated with anyone else, including any extremist or organized groups. His intention was to only attend the rally at the Ellipse on January 6th, which did not include going into the U.S. Capitol building or onto the grounds.

Second, the defense is not aware of any evidence the defendant incited others to commit acts of violence or destruction.

Third, the defense is not aware of any evidence the defendant engaged in any violence or questionable conduct towards law enforcement.

Fourth, the defense is not aware of any evidence Mr. Galloway destroyed or stole any property from the U.S. Capitol building.

Fifth, based on the Government's investigation, it appears Mr. Galloway remained in a limited part of the building for two short periods of time – about10 minutes in total. The defense is not aware of any evidence suggesting Mr. Galloway entered any rooms or offices in the U.S. Capitol, or into any personal spaces, or into the Senate or House Chamber.

Mr. Galloway did not come to Washington, D.C., with the intention of subverting democracy. Mr. Galloway came to our Nation's Capital to peacefully protest what he believed at that time to be a fraudulent election. By the time Mr.

Galloway arrived at the U.S. Capitol grounds around 2:00 p.m., many of the barriers that had been erected along the perimeter of the building were no longer present. Mr. Galloway met no resistance in his walk to and inside the Capitol building. At the time, Mr. Galloway didn't dream he'd be charged for going into the building. After seeing the video footage showing protestors beating police officers, spraying gas in their faces, screaming obscenities, and destroying property, it made Mr. Galloway cringe. He did not witness any of that at all. He is left with deep regret and remorse.

The government concedes that Mr. Galloway committed no violent acts and destroyed no property. His actions within the U.S. Capitol have been tracked on the CCTV footage [2] and this demonstrates that while unlawfully present in the Capitol with no excuse, he did not destroy property, steal property, commit violent acts, or encourage others to do so. He entered and exited through doors. While in the building he heard someone had been shot and he was shocked by that news. This has been a long road for Mr. Galloway and his family. Fortunately, he has a supportive relationship with his immediate family who has stood by him since the beginning of this case as well as a supportive extended family.

To his credit, Mr. Galloway has fully acknowledged his misconduct by answering pointed questions by the FBI agents in an arrest interview, including his

---

[2]

    Since Mr. Galloway plead guilty, it is believed the Government has scoured additional CCTV and other video footage in an attempt to "catch" Mr. Galloway engaging in violence or other disruptive behavior. After several more discovery productions since his plea, there is none.

expressions of true and full contrition. When he was arrested he was relieved by the opportunity to take responsibility for his actions.

Mr. Galloway pled guilty at an early stage in the proceedings thus saving valuable judicial resources, as well as the resources of the U.S. Attorney's Office. It is of utmost importance to Mr. Galloway that this Court understand he is incredibly remorseful for his actions on January 6, 2021. Mr. Galloway has endured life-long damage to his reputation. He has fully accepted responsibility for his bad judgement in entering the Capitol building and grounds by pleading guilty in what can be described as the "first wave" of defendants that have pled guilty. He has been the subject of a number of media accounts lumping him with others that were there on January 6, 2021. None of this will be erased from the internet – it may be there forever. His personal character is forever besmirched, and his family will also suffer since they are inextricably intertwined with him.

Mr. Galloway does not seek to minimize the harm caused by his behavior by the explanations in this sentencing memo. Nonetheless, in determining what punishment is warranted, this Court should not lose sight he did no harm, and intended no harm, whether to a person or to property. The Court should not consider any conduct that Mr. Galloway did not plead guilty to. As noted herein it does not appear that Mr. Galloway exercised managerial authority over any other participant and he was average or minor participant whose conduct was not peripheral to the advancement of the offense.

Most telling about Mr. Galloway is despite all he has been through this past year, he continues to hold-up his head high and is otherwise a well-respected member of his community.

Mr. Galloway (age 34) was born in San Diego, California. He has a good relationship with both his parents as well as his siblings. He spent the earlier part of his childhood in San Diego, CA, then his family moved to Wyoming. Entering a second marriage in 2018, he has two children. (ages 5 &6) He is the primary wage-earner for his family of four. (Earlier, in 2010-13 he was married but here were no children.)

In 2008, Mr. Galloway enlisted in the U.S. Navy where he was deployed both domestically and abroad. Having reached the rank of Petty Officer E-4, he was honorably discharged in 2018.

He is generally in good health. ██████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████

As noted in the PSR, Mr. Galloway has had minor contacts with the criminal justice system. His law abiding life and his post arrest behavior demonstrate he is capable of being a productive citizen and the Court can rely on such as a basis to sentence him to a term of probation considering the §3553 factors.

He is currently receiving federal veterans disability payments and, presently, is working as a part-time delivery driver. Also, he is currently enrolled, full-time, in a technical school specializing in becoming a mechanic for heavy duty equipment. Because of his enrollment in a technical school, his income is limited. Thus, any extraordinary fine imposed by the Court will be a heavy burden on him and his family.

Attached are the following letters submitted in support of Mr. Galloway:

1.   Janet E. Barrett (Cousin)

2.   Rebekah Craig (Sister)

3.   Jonathan David Galloway, Jr.  (Brother)

4.   Leighann Galloway (Mother)

These letters attest to the excellent reputation of Mr. Galloway, as to his being a devoted family member, hard-working, and they all describe passion for life and building a better future for himself, wife and children,

**B.    General Deterrence – 18 U.S.C. § 3553(a)(2)(B) –
To Adequately Deter Others From Criminal Conduct.**

The purposes of sentencing include punishment, rehabilitation, general deterrence, specific deterrence, and incapacitation. In this case, there appears to be no need for incapacitation, specific deterrence or rehabilitation. The public will be adequately deterred by the sentences meted out against those who perpetrated the violence and mayhem at the U.S. Capitol and the negative publicity and collateral consequences attendant to even a misdemeanor conviction for those involved. Those who would not be deterred by these consequences are likely not deterrable. And, a

sentence that leaves a family impoverished when other reasonable alternatives exist would not promote respect for the law. Indeed, unnecessarily harsh sentences imposed upon those who were less culpable will not encourage respect for the law or promote just punishment, but are likely to be counterproductive, and labeled as political posturing.  A period of probation does constitute punishment and will deter others as one's liberty interests are curtailed by travel restrictions, reporting obligations, and limitations on one's personal freedoms. The National Institute of Justice, Department of Justice, issued a summary of the current state of empirical research stating that "prison sentences are unlikely to deter future crime," and "increasing the severity of punishment does little to deter crime." U.S. Dep't of Justice, Office of Justice Programs, Nat'l Inst. of Justice, *Five Things to Know About Deterrence* (July 2014) (relying on Daniel S. Nagin, *Deterrence in the Twenty-First Century*, 42 Crime & Justice in America 199 (2013)), available at https://ncjrs.gov/pdffiles1/njj/247350.pdf.

### C.     Specific Deterrence – 18 U.S.C. § 3553(a)(2)(C) –
### To Protect the Public From Further Crimes Of The Defendant

Mr. Galloway's likelihood of recidivism is very low. He has expressed genuine remorse and contrition, has cooperated fully with law enforcement and he accepted the first plea offer tendered with no hesitation. His acceptance of responsibility was complete and without reservation. He has never tried to minimize his behavior. Research has consistently shown that while the certainty of being caught and punished has a deterrent effect, "increases in severity of punishments do not yield significant (if any) marginal deterrent effects." Michael

Tonry, *Purposes and Functions of Sentencing,* 34 Crime & Just. 1, 28 (2006)" Three National Academy of Science panels… reached that conclusion, as has every major survey of evidence." *Id.*; See *also* Zvi D. Gabbay, *Exploring the Limits of the Restorative Justice Paradigm: Restorative Justice and Sentence Severity: An Analysis of Recent Research (1999),* summary available at http://members.lycos.co.uk/lawnet/SENTENCE.PDF. The report, commissioned by the British Home Office, examined penalties in the United States as well as several European Countries. *Id.* at 1. It examined the effects of changes to both the certainty and severity of punishment. *Id.* While significant correlations were found between the certainty of punishment and crime rates, the "correlations between sentence severity and crime rates…were not sufficient to achieve statistical significance." *Id.* at 2. The report concluded that the "studies reviewed do not provide a basis for inferring that increasing the severity of sentences is capable of enhancing deterrent effects." *Id.* at 1. Given Mr. Galloway's age (59), and other issues consistent with what is mentioned above, the likelihood of Mr. Galloway ever re-offending is as close to zero as one might come. A punishment of any jail time in this case is going to have the exact opposite effect than what is in the interest of justice. The alternatives to incarceration make financial sense, conserve bed space for individuals from which society would need greater protection and would serve the ends of justice.

A probationary sentence is further justified in this case when considering his significant family obligations, as well as his sincere and complete remorse, his early

and consistent acceptance of responsibility, and the lack of a need to further deter him.[3]

**VII.   The Need To Avoid Unwarranted Sentence Disparities**

If this Court were to impose a sentence greater than a probationary term, community service, and restitution, it would create an unwarranted sentencing disparity compared to similar cases that have already gone to sentencing in this Court. The following cases are a sampling of January 6th U.S. Capitol breach cases, where the defendant(s) plead to 40 U.S.C. § 5104(e)(2)(G), which resulted in no active prison time:

- *United States v. Eliel Rosa*, 21-cr-00068 (TNM) (Oct.12, 2021) (Sentenced to 12 months probation – Mr. Rosa accepted responsibility early on, did not pre-plan or coordinate activities, and did not go far into the U.S. Capital building.)

- *United States v. Valerie Ehrke*, 21-cr-00097 (PLF) (Sept. 17, 2021) (Sentenced to 36 months probation. She was inside the Capital Building and part of a crowd, but was in the back and was pushed out fairly quickly)

- *United States v. Jennifer Parks,* 21-cr-00363 (CJN) (Dec. 8, 2021) (Sentenced to 24 months probation where govt. ask for 30 days home detention.)

- *United States v. Jordan Stotts,* 21-cr-00272 (TJK) (Nov. 9, 2021) (Sentenced to 24 months probation where defendant shouted at MPD officers and posted non-remorseful comments following January 6th.)

---

[3]

 For those in a Criminal History Category I, the recidivism rate is 15.2%. For those who have been employed, the rate is 12.7%; and for those who were ever married, the rate is 9.8%. For those with no history of illicit drug use, the recidivism rate is half those who have a drug history. *See* U.S. Sentencing Commission, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines,* at 29 (May 2004).

- *United States v. Julia Sizer,* 21-cr-00621-CRC (Government requested 2 months home detention however, this Court imposed 24 months probation. She was inside the Capitol Building for approximately 2 minutes and she recorded events on her cellphone.)

- *United States v. Jacob Lewis,* 21-cr-0100-CRC (Government requested 2 months home detention however, this Court imposed 12 months probation.  Mr. Lewis was inside the Capitol Building for approximately 7 minutes)

- *United States v. Traci Sunstrum,* 21-cr-00652-CRC (Government requested 14 days incarceration however, this Court imposed 30 days home detention. She was inside the Capitol Building for approximately 20 minutes and on 1/6/2021 she posted a brief message as a "citizen journalist.")

- *United States v. Bryan Ivey,* 21-cr-00267-CRC (Government requested 14 days imprisonment however, this Court imposed 60 days home detention. He was inside the Capitol Building for approximately 35 minutes, wave rioters inside, and took multiple videos, which he later deleted)

- *United States v. Eric Von Bernewitz,* 21-cr-00307-CRC (Government requested 14 days imprisonment however, this Court imposed 60 days home detention. He (and his brother) was inside the Capitol Building for less than 15 minutes)

None of this is to suggest that any of these examples, for a conviction of 40 U.S.C. § 5104(e)(2)(G), should have received a sentence of incarceration / home detention, but only to suggest there is nothing materially different about Mr. Galloway or his conduct which would justify a sentence of incarceration / home detention. Judges of this district court have sentenced many January 6th misdemeanor cases (for 40 U.S.C. § 5104(e)(2)(G)) to probation or home detention. In fact, counsel has surveyed the 40 U.S.C. § 5104(e)(2)(G) cases/sentences (through September 15, 2022).[4]  176 January 6th defendants have been sentenced (following a

---

[4]     *See Exhibit* "Government's Sentencing Table" – Case No. 21-156-JDB, Doc. 61-1 (9/15/2022).

plea to 40 U.S.C. § 5104(e)(2)(G)) – 110 sentences (60%) were probation or a period of home detention, and 66 sentences (40%) imposed a period of incarceration.

However the nature and circumstances of those offenses, as well as the history and characteristics of the 66 defendants in the § 5104(e)(2)(G) cases resulting in a period of imprisonment, are based on far more egregious conduct than the conduct of Mr. Galloway – and therefore are readily distinguished.

Mr. Galloway was far more cooperative with law enforcement, did not attempt to hide any evidence, did not participate in questionable or violent conduct, and he has not publicly blamed another group for the violence that day. All told, the facts of the offense conduct and characteristics of the defendants who garnered incarceration were starkly different than Mr. Galloway' conduct and characteristics.

## **CONCLUSION**

Mr. Galloway respectfully asks the Court to impose a short term of probation (12 months) with community service hours largely because: (1) His lack of preparation or planning prior to January 6, 2021, to be part of the U.S. Capitol breach event, and his peaceful, non-destructive and non-violent behavior that day both outside and inside the U.S. Capitol building, (2) his immediate cooperation with law enforcement officers when arrested, as well as his ongoing cooperation and willingness to resolve his case at the earliest opportunity, and (3) to avoid an unwarranted sentencing disparity among similarly situated January 6th defendants. In the alternative, he asks that the Court consider a non-custodial sentence with a restriction that he remain in his home except for work and excused absences to go to church and medical appointments. In the event the Court finds a period of

incarceration warranted, Mr. Galloway asks that he be allowed to serve it on weekends which is what the Court did in *United States v. Johnny Taylor,* 15-cr-76 (BAH). [5]

Imposition of a fine is discretionary, and, defendant respectfully submits, should not be ordered to pay a fine in this case. Defendant's financial condition (discussed herein) is such that he cannot pay any significant fine. He will, of course, remit the agreed upon $500.00 restitution and the $10.00 special assessment.

For the foregoing reasons and such other reasons that may appear just and proper, Andrew Galloway respectfully asks this Court to fashion a sentence of 12 months probation with community service hours. This sentence is "sufficient but not greater than necessary" as required by 18 U.S.C. §3553(a). It would be a sentence in the best tradition of federal judicial discretion, which will consider Mr. Galloway as an individual and account for his unique failings and positive attributes that, in the words of Justice Kennedy "sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Rita v. United States*, 551 U.S. at 364, (Stevens, J. concurring), *citing Koon v. United States*, 116 S.Ct. 2053 (1996).

---

[5]

Furthermore, there is a remarkable cost savings to the taxpayers of the United States if the Court imposes a period of probation rather than a term of incarceration. As noted in the PSR, (¶97) the monthly cost of imprisonment is $3,688.00, $2,980.00 for community confinement, and $371.00 monthly for supervision.

Respectfully submitted,

_____
Allen H. Orenberg, Bar No. 395519
The Orenberg Law Firm, P.C.
12505 Park Potomac Avenue, 6th Floor
Potomac, Maryland 20854
Tel. No. 301-984-8005
Cell Phone No. 301-807-3847
Fax No. 301-984-8008
aorenberg@orenberglaw.com

Dated: October 6, 2022